**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**WEST VIRGINIA HIGHLANDS
CONSERVANCY,**

        **Plaintiff,**

    **v.**                                  **CIVIL ACTION NO.** __2:25-cv-00661__

**REPUBLIC ENERGY, LLC,**

        **Defendant.**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR CIVIL PENALTIES**

    1.      This is a citizen suit for declaratory judgment and mandatory injunctive relief and for civil penalties against Defendant Republic Energy, LLC ("Republic") for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. ("Clean Water Act" or "CWA"), and the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 et seq. ("SMCRA") at its Skitter Creek Mine No. 1, Skitter 2 Surface Mine, Republic 2 Surface Mine, and MT5B Surface Mine, in Kanawha, Fayette, and Raleigh Counties, West Virginia.

    2.      As detailed below, Plaintiff alleges that Defendant Republic discharged and continues to discharge pollutants into waters of the United States in persistent violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, and of the conditions and limitations of four West Virginia/National Pollution Discharge Elimination System ("WV/NPDES") Permits issued to Republic by the State of West Virginia pursuant to Section 402 of the Clean Water Act. Specifically, Republic is in ongoing violation of the fish tissue based effluent limits for the toxic

1

pollutant selenium at those mines.

3.      Plaintiff further alleges that Defendant's selenium discharges violated and continue to violate performance standards under SMCRA and the terms and conditions of Defendant's surface mining permits.

## JURISDICTION AND VENUE

6.      This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365 (Clean Water Act citizen suit provision), and 30 U.S.C. § 1270 (SMCRA citizen suit provision).

7.      On April 9, 2025, Plaintiff gave notice of the violations and its intent to file suit to the Defendant and its registered agent, the United States Environmental Protection Agency ("EPA"), the Office of Surface Mining, Reclamation, and Enforcement ("OSMRE"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and Section 520(b)(1)(A) of SMCRA, 30 U.S.C. § 1270(b)(1)(A).

8.      More than sixty days have passed since notice was served and neither EPA, OSMRE, nor WVDEP has commenced and diligently prosecuted a civil or criminal action to require compliance with the Clean Water Act or SMCRA.

9.      Moreover, neither EPA nor WVDEP commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or comparable state law to redress the violations prior to the issuance of the April 9, 2025 notice letter.

10.     Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the Clean Water Act violations are located in this District, and pursuant to 30 U.S.C. §

1270(c) because the coal mining operations complained of are located in this District.

## PARTIES

11.     Republic is a West Virginia limited liability company engaged in the business of coal mining with its principal office located in Bristol, TN.

12.     At all relevant times, Republic owned and operated Skitter Creek Mine No. 1 in Fayette and Raleigh Counties, WV, which is regulated by Surface Mining Permit S302794 and which discharges pollutants from various outfalls pursuant to and subject to the effluent limitations of WV/NPDES Permit No. WV1014951.

13.     At all relevant times, Republic owned and operated the Skitter 2 Surface Mine in Fayette and Kanawha Counties, WV, which is regulated by Surface Mining Permit S302299 and which discharges pollutants from various outfalls pursuant to and subject to the effluent limitations of WV/NPDES Permit WV1019252.

14.     At all relevant times, Republic owned and operated the Republic 2 Surface Mine in Kanawha, Fayette, and Raleigh Counties, WV, which is regulated by Surface Mining Permit S300101 and which discharges pollutants from various outfalls pursuant to and subject to the effluent limitations of WV/NPDES Permit WV1019422.

15.     At all relevant times, Republic owned and operated the MTB5 Surface Mine in Fayette and Raleigh Counties, WV, which is regulated by Surface Mining Permit S301006 and which discharges pollutants from various outfalls pursuant to and subject to the effluent limitations of WV/NPDES Permit WV1022121.

16.     Republic is a person within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5), and Section 701(19) of SMCRA, 30 U.S.C. § 1291(19).

17.     Plaintiff West Virginia Highlands Conservancy, Inc. ("WVHC") is a nonprofit organization incorporated in West Virginia. It has more 1,500 members. WVHC works for the conservation and wise management of West Virginia's natural resources.

18.     Plaintiff's members suffer injuries to their aesthetic, recreational, environmental, and/or economic interests as a result of Defendant's unlawful discharges of toxic selenium. Plaintiff's members fish, swim, observe wildlife, or otherwise use the waters affected by Republic's discharges and performance standard violations. Republic's violations of its selenium fish-tissue limits necessarily show harm to the aquatic communities in the waters receiving Republic's discharges. Plaintiff's members' use and enjoyment of the waters downstream from Defendant's operations are diminished and curtailed because of Republic's unlawful discharges and permit violations.

19.     For example, WVHC member Doug Wood has regularly visited the areas downstream from and affected by Republic's discharges beginning nearly fifty years ago and continuing to the present. In his professional capacity running a statewide stream monitoring program for the West Virginia Department of Environmental Protection and, later, in his personal capacity as a naturalist and historian, Mr. Wood has visited the affected areas and tried to appreciate the streams. Mr. Wood has seen deformed fish and frogs in other high-selenium streams and is very concerned and upset about the impacts of Republic's selenium discharges on the receiving streams' aquatic communities, causing him to enjoy his time at the streams less. Mr. Wood fishes in waters all over the state but does not fish in these streams—though he would like to—because of the surface mining pollution like that coming off of Defendant's operations.

20.     If Republic's unlawful discharges and performance standard violations ceased, the harm to the interests of Plaintiff's members could be redressed. Injunctions and/or civil penalties

would redress Plaintiff's members' injuries by preventing and/or deterring future violations of the limits and performance standards in Republic's permits.

21.     At all relevant times, Plaintiff was and is a "person" as that term is defined by the CWA, 33 U.S.C. § 1362(5), and SMCRA, 30 U.S.C. § 1291(19).

## STATUTORY AND REGULATORY FRAMEWORK

22.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a National Pollution Discharge Elimination System ("NPDES") Permit issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

23.     Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

24.     Section 402 of the CWA, 33 U.S.C. § 1342, directs the Administrator of EPA to prescribe conditions for NPDES permits to ensure compliance with the requirements of the CWA, including conditions on data and information collection, reporting, and other such requirements as the Administrator deems appropriate.

25.     Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate, and concentration of chemical, physical, biological, and other constituents of wastewater discharges. Effluent limitations are among the conditions and limitations prescribed in NPDES permits issued under Section 402(a) of the CWA, 33 U.S.C. § 1342(a).

26.     Section 303(a) of the CWA, 33 U.S.C. § 1313(a), requires that states adopt ambient water quality standards and establish water quality criteria for particular water bodies that will protect the designated uses of the water.  When technology based effluent limitations are insufficient to keep receiving waters within those levels, the permit must include stricter water quality based effluent limits ("WQBELs") that reflect water quality standards and criteria.  33 U.S.C. § 1311(b)(1)(C).

27.     At all times relevant to this complaint, the State of West Virginia has been authorized by EPA to administer a NPDES program for regulating the discharges of pollutants into the waters of West Virginia. Permits issued under this program are known as "WV/NPDES" permits.

28.     Holders of WV/NPDES Permits are required to monitor their discharges and report their average monthly discharges and maximum daily discharges on a quarterly basis. Those reports are called "Discharge Monitoring Reports," or "DMRs."

29.     Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter."

30.     Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a), of the CWA, a WQBEL, and "a permit or condition thereof issued" under Section 402, 33 U.S.C. § 1342, of the CWA.

31.     In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant or defendants to comply with the CWA and

to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1365(d). *See* 33 U.S.C. § 1365(a).

32.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

33.     Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, the court may assess a civil penalty of $68,445 per day for each violation that occurred after November 2, 2015 where the penalties are assessed after January 8, 2025. *See* 40 C.F.R. § 19.4.

34.     Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

35.     Section 506 of SMCRA, 30 U.S.C. § 1256, prohibits any person from engaging in or carrying out surface coal mining operations without first obtaining a permit from the Office of Surface Mining Reclamation and Enforcement ("OSMRE") or from an approved state regulatory authority.

36.     At all relevant times, the State of West Virginia has administered an approved surface mining regulatory program, known as the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA"). *See* 30 C.F.R. § 948.10.

37.     The legislative rules promulgated under the WVSCMRA provide that, as a general condition of all surface mining permits issued under the WVSCMRA, the permittee must comply with all applicable performance standards. W. Va. Code St. R. § 38-2-3.33.c.

38.     Among the performance standards mandated by SMCRA and the WVSCMRA is that mining activities must be conducted in such a manner so as to "prevent material damage to the hydrologic balance outside the permit area." 30 C.F.R. §§ 816.41(a), 817.41(a); W. Va. Code St. R. § 38-2-14.5.

39.     Another performance standard mandated by SMCRA and the WVSCMRA is that "[d]ischarge from areas disturbed by [mining activities] shall be made in compliance with all applicable State and Federal water quality laws and regulations and with the effluent limitations for coal mining promulgated by the U.S. Environmental Protection Agency." 30 C.F.R. §§ 816.42, 817.42; W. Va. Code St. R. § 38-2-14.5.b. Further "[a]dequate facilities shall be installed, operated and maintained using the best technology currently available in accordance with the approved preplan to treat any water discharged from the permit area so that it complies with [effluent limitations]." W. Va. Code St. R. § 38-2-14.5.c; 30 C.F.R. § 816.41(d)(1).

40.     Accordingly, violations of NPDES permit-imposed effluent limitations and applicable water quality standards are violations of SMCRA and WVSCMRA and the associated mining permits issued thereunder.

41.     Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), authorizes any person adversely affected to bring an action in federal court to compel compliance with SMCRA against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to [SMCRA]."

42.     Section 520(d) of SMCRA, 30 U.S.C. § 1270(d), authorizes the Court to award the costs of litigation, including attorney and expert witness fees to any party whenever the court determines such an award is appropriate.

## **FACTS**

### *Republic's Selenium Fish Tissue Based Effluent Limitations*

43.     Selenium is a pollutant designated as toxic by the U.S. Environmental Protection Agency. 40 C.F.R. § 401.15. It is present in many coal seams and intervening rock layers and is released to the environment when those materials are disturbed by surface mining activities.

44.     Prior to June 2016, West Virginia used water column based water quality criteria for the state's selenium water quality standard, with compliance determined by measuring the concentration of the pollutant in a waterbody and comparing it to the standards for acute (short-term) and chronic (long-term) exposure.

45.     On June 24, 2016, in part due to selenium's characteristic as a bioaccumulative pollutant—meaning its impacts are felt less from acute toxicity events and more from accumulation in tissue through long-term exposure—the United States Environmental Protection Agency approved West Virginia's adoption of a fish tissue based water quality standard for selenium, eliminating the previous stand-alone water column criteria. The new standard consists of different criteria depending on whether concentrations of selenium are measured in only the fish egg/ovary tissue, only in the fish muscle tissue, or as a percentage of the whole body weight.

46.     As relevant to Plaintiff's claims, the whole body fish tissue criterion is 8.0 milligram per kilogram (mg/kg), meaning that is the level EPA and WVDEP determined must be maintained to prevent harm to aquatic life. W. Va. Code St. R. § 47-2-8, Appendix E, Table 1.

47.     WVDEP developed a guidance document titled "West Virginia Selenium Chronic Aquatic Life Standard Implementation" that discusses how the fish tissue criteria may be translated into water quality based effluent limitations for selenium discharges pursuant to WV/NPDES permits. The agency may use a "site-specific bioaccumulation factor" to translate the fish tissue criteria into a water column concentration that can be monitored at the outfall.

Alternatively, the agency may assign the fish tissue limits directly, with compliance determined by measuring the concentration of selenium in the tissue of a representative sample of fish collected from a defined stream reach below a permitted outfall. Under this approach, monitoring of specific, pre-determined fish species is performed twice-annually (in the summer between August 1 and October 1 and in the winter between December 1 and March 1), with each sample determining compliance for six months of discharges. A single sampling location may be used to determine compliance with effluent limits for multiple upstream outfalls.

48.     Because compliance with the fish tissue effluent limits is measured directly against the water quality criteria, a violation of the effluent limits necessarily constitutes a violation of the water quality standard.

49.      On April 10, 2019, WVDEP granted Republic's request to modify permit WV1014951 for the Skitter Creek Mine No. 1 to impose whole body fish tissue limits of 8mg/kg with twice-annual sampling for Outfall 002, which discharges to the Left Fork of White Oak Creek. Monitoring of that limit is measured at a downstream compliance point in Left Fork of White Oak Creek that is designated LFOW-Fish 1. Those limits were retained in the most recent reissuance of permit WV1014951 on January 20, 2021.

50.     On April 10, 2019, WVDEP granted Republic's request to modify permit WV1019252 for the Skitter 2 Surface Mine to impose whole body fish tissue limits of 8mg/kg with twice-annual sampling for Outfall 001, which discharges to an unnamed tributary of Cabin Creek, and Outfall 003, which discharges to Cabin Creek. Monitoring of the limits on those outfalls is measured at a downstream compliance point in Cabin Creek that is designated CC-Fish 2. Those limits were retained in the most recent reissuance of permit WV1019252 on May 4, 2021.

10

51.     On April 10, 2019, WVDEP granted Republic's request to modify permit WV1019422 for the Republic 2 Surface Mine to impose whole body fish tissue limits of 8mg/kg with twice-annual sampling for Outfall 006, which discharges to an unnamed tributary of Cabin Creek, and Outfall 011, which discharges to an unnamed tributary of Cabin Creek. Monitoring of the limits on those outfalls is measured at the same CC-Fish 2 compliance point in Cabin Creek used by permit WV1019252. Those limits were retained in the most recent reissuance of permit WV1019422 on August 7, 2023.

52.     On August 9, 2019, WVDEP granted Republic's request to modify permit WV1022121 for the MT5B Surface Mine to impose whole body fish tissue limits of 8mg/kg with twice-annual sampling for Outfall 001, which discharges to Lick Run. Monitoring of that limit is measured at a downstream compliance point in Lick Run that is designated LR-Fish 001. Those limits were retained in the most recent reissuance of permit WV1022121 on March 31, 2021.

### *Republic's Selenium Violations*

53.     Since receiving its requested permit modifications, Republic has collected composite samples of fish from the compliance points LFOW-Fish 1, CC-Fish 2, and LR-Fish 1 twice annually in accordance with its effluent limits. Depending on the fishes' presence in the sample reach in adequate numbers at the time of collection, Republic has analyzed composite samples of Rhinichthys atratulus (Eastern blacknose dace), Semotilus atromaculatus (creek chub), and/or Lepomis cyanellus (green sunfish) in both summer and winter.

54.     An exceedance of 8.0 mg/kg in any one species composite sample (or average of two samples for a single species if more than one are collected in a monitoring period) constitutes a violation of the effluent limits for all upstream outfalls.

55.     Since receiving its fish tissue limits, Republic has measured fish tissue concentrations greater than 8.0 mg/kg in one or more species composite samples at compliance

points LFOW-Fish 1, CC-Fish 2, and LR-Fish 001 in numerous semi-annual monitoring periods:

| WV/NPDES Permit | Outfall | Compliance Point | Sample Period | Species | Selenium Value (mg/kg) |
|---|---|---|---|---|---|
| WV1014951 | 002 | LFWO-Fish 1 | Winter 2025 | Rhinichthys atratulus | 13.102 |
| WV1014951 | 002 | LFWO-Fish 1 | Summer 2024 | Rhinichthys atratulus | 8.938 |
| WV1014951 | 002 | LFWO-Fish 1 | Winter 2024 | Rhinichthys atratulus | 8.67 |
| WV1014951 | 002 | LFWO-Fish 1 | Summer 2023 | Rhinichthys atratulus | 8.372 |
| WV1019252 | 001 | CC-Fish 2 | Winter 2025 | Rhinichthys atratulus | 9.17 |
| WV1019252 | 001 | CC-Fish 2 | Winter 2025 | Semotilus atromaculatus | 8.131 |
| WV1019252 | 001 | CC-Fish 2 | Summer 2023 | Lepomis cyanellus | 10.45 |
| WV1019252 | 001 | CC-Fish 2 | Summer 2022 | Semotilus atromaculatus | 9.36 |
| WV1019252 | 001 | CC-Fish 2 | Summer 2022 | Lepomis cyanellus | 8.077 |
| WV1019252 | 003 | CC-Fish 2 | Winter 2025 | Rhinichthys atratulus | 9.17 |
| WV1019252 | 003 | CC-Fish 2 | Winter 2025 | Semotilus atromaculatus | 8.131 |
| WV1019252 | 003 | CC-Fish 2 | Summer 2023 | Lepomis cyanellus | 10.45 |
| WV1019252 | 003 | CC-Fish 2 | Summer 2022 | Semotilus atromaculatus | 9.36 |
| WV1019252 | 003 | CC-Fish 2 | Summer 2022 | Lepomis cyanellus | 8.077 |
| WV1019422 | 006 | CC-Fish 2 | Winter 2025 | Rhinichthys atratulus | 9.17 |
| WV1019422 | 006 | CC-Fish 2 | Winter 2025 | Semotilus atromaculatus | 8.131 |
| WV1019422 | 006 | CC-Fish 2 | Summer 2023 | Lepomis cyanellus | 10.45 |
| WV1019422 | 006 | CC-Fish 2 | Summer 2022 | Semotilus atromaculatus | 9.36 |
| WV1019422 | 006 | CC-Fish 2 | Summer 2022 | Lepomis cyanellus | 8.077 |
| WV1019422 | 011 | CC-Fish 2 | Winter 2025 | Rhinichthys atratulus | 9.17 |
| WV1019422 | 011 | CC-Fish 2 | Winter 2025 | Semotilus atromaculatus | 8.131 |
| WV1019422 | 011 | CC-Fish 2 | Summer 2023 | Lepomis cyanellus | 10.45 |
| WV1019422 | 011 | CC-Fish 2 | Summer 2022 | Semotilus atromaculatus | 9.36 |
| WV1019422 | 011 | CC-Fish 2 | Summer 2022 | Lepomis cyanellus | 8.077 |
| WV1022121 | 001 | LR-Fish 001 | Winter 2025 | Rhinichthys atratulus | 10.411 |
| WV1022121 | 001 | LR-Fish 001 | Winter 2025 | Semotilus atromaculatus | 9.34 |
| WV1022121 | 001 | LR-Fish 001 | Winter 2023 | Rhinichthys atratulus | 9.536 |
| WV1022121 | 001 | LR-Fish 001 | Winter 2023 | Semotilus atromaculatus | 10.125 |

56.     Due to the exceedances at compliance point LFWO-Fish 1, Republic violated the selenium fish-tissue effluent limits on Outfall 002 of permit WV1014951 for the Summer 2023, Winter 2024, Summer 2024, and Winter 2025 monitoring periods.

57.     Due to the exceedances at compliance point CC-Fish 2, Republic violated the selenium fish-tissue effluent limits on Outfalls 001 and 003 of permit WV1019252, and Outfalls 006 and 011 of permit WV1019422 for the Summer 2022, Summer 2023, and Winter 2025

monitoring periods.

58.    Due to the exceedances at compliance point LR-Fish 001, Republic violated the

selenium fish-tissue effluent limits on Outfall 001 of permit WV1022121 for the Winter 2023

and Winter 2025 monitoring periods.

### *Plaintiff's 60-Day Notice Letter*

59.    Plaintiff sent a notice of intent letter, postmarked on April 9, 2025, to Republic

notifying it that its discharges of pollutants in violation of WV/NPDES permits WV1014951,

WV1019252, WV1019422, and WV1022121 violate the Clean Water Act and SMCRA.

60.    The notice letter was sent by certified mail, return receipt requested, to the

following persons: Responsible Official, Republic Energy, LLC; Secretary Harold D. Ward,

WVDEP; James Payne, Acting Administrator of EPA; Catherine Libertz, Acting Regional

Administrator of EPA Region III; Doug Burgum, Secretary of the United States Department of

Interior; Director of the OSMRE; Glenda Owens, Deputy Director of OSMRE; Thomas Shope,

Regional Director for the Appalachian Region of the OSMRE; and Corporation Service

Company, Registered Agent for Republic Energy, LLC.

61.    The notice letter also notified Republic of Plaintiff's intent to sue Republic for

those violations at the end of the 60-day period required by statute and invited Republic to

inform Plaintiff if the company had taken any steps to remedy its violations.

62.    Republic has not informed Plaintiff of any measures the company had taken to

remedy the violations alleged in Plaintiff's complaint or prevent their future occurrence.

63.    To Plaintiff's knowledge, neither WVDEP nor the EPA or OSMRE instituted a

court action to remedy the violations alleged in the notice letter. *See* 30 U.S.C. § 1270(b)(1)(B);

33 U.S.C. § 1365(b)(1)(B).

**FIRST CLAIM FOR RELIEF**
(Clean Water Act Violations of WV/NPDES Permit WV1014951)

64.     Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 63 *supra*.

65.     Republic's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the CWA, which prohibits the discharge of any pollutant by any person, except in compliance with a permit. 33 U.S.C. § 1311.

66.     The selenium whole-body fish tissue limits in WV/NPDES Permit WV1014951 are "effluent standards or limitations" for purposes of section 505(a)(1) of the CWA because they are a condition of a permit issued under section 402 of the Act. 33 U.S.C. § 1365(f).

67.     Each and every discharge in excess of the effluent limitations in WV/NPDES Permit WV1014951 is actionable under section 505(a)(1) of the CWA. 33 U.S.C. § 1365(a)(1).

68.     A violation of a limitation in a permit with semi-annual monitoring is considered to be a violation on each and every day of that monitoring period.

69.     On information and belief, Plaintiff alleges that Republic has violated the effluent limitations in WV/NPDES Permit WV1014951 on numerous occasions beginning with the Summer 2023 monitoring period.

70.     Unless enjoined, Republic will remain in continuing violation of the Clean Water Act.

71.     On information and belief, Plaintiff alleges that Republic is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the effluent limitations in WV/NPDES Permit WV1014951 because Republic has taken no meaningful action to eradicate the underlying cause of the violations.

72.    Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Republic is liable for civil penalties of up to $68,445 per day of violation for its violations of the effluent limitations in WV/NPDES Permit WV1014951.

### SECOND CLAIM FOR RELIEF
(SMCRA Violations at the Skitter Creek Mine No. 1)

73.    Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 72 *supra*.

74.    Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

75.    As discussed above, federal and state regulations under SMCRA include performance standards that (1) prohibit surface mining operations that cause violations of effluent standards in Clean Water Act permits and (2) prohibit operations from causing material damage to the hydrologic balance outside of the permit area.

76.    Under W. Va. Code St. R. § 38-2-3.33.c, all performance standards are incorporated as conditions in permits issued under the State Act.

77.    WV/NPDES Permit WV1014951 regulates Republic's discharges from the Skitter Creek Mine No. 1 (Mining Permit S302794).

78.     On information and belief, Plaintiff alleges that Republic has violated the effluent limitations in WV/NPDES Permit WV1014951 on one or more occasion beginning with the Summer 2023 monitoring period.

79.    Consequently, Republic has committed one or more violations of the performance standards incorporated in the regulations under SMCRA.

80.    Because those performance standards are permit conditions, Republic is also in

violation of the terms and conditions of Mining Permit S302794.

81.    Unless enjoined, Republic will remain in ongoing and continuing violation of

SMCRA.

82.    On information and belief, Plaintiff alleges that Republic is in continuing and/or

intermittent violation of SMCRA as a result of its violations of the effluent limitations in

WV/NPDES Permit WV1014951 because Republic has taken no meaningful action to eradicate

the underlying cause of the violations.

**THIRD CLAIM FOR RELIEF**
(Clean Water Act Violations of WV/NPDES Permit Number WV1019252)

83.    Plaintiff incorporates by reference all allegations contained in paragraphs 1

through 82 *supra*.

84.    Republic's wastewater discharges identified in the above paragraphs are

discharges from a point source or sources into navigable waters of the United States within the

meaning of Section 301 of the CWA, which prohibits the discharge of any pollutant by any

person, except in compliance with a permit. 33 U.S.C. § 1311.

85.    The selenium whole-body fish tissue limits in WV/NPDES Permit WV1019252

are "effluent standards or limitations" for purposes of section 505(a)(1) of the CWA because they

are a condition of a permit issued under section 402 of the Act. 33 U.S.C. § 1365(f).

86.    Each and every discharge in excess of the effluent limitations in WV/NPDES

Permit WV1019252 is actionable under section 505(a)(1) of the CWA. 33 U.S.C. § 1365(a)(1).

87.    A violation of a limitation in a permit with semi-annual monitoring is considered

to be a violation on each and every day of that monitoring period.

88.     On information and belief, Plaintiff alleges that Republic has violated the effluent limitations in WV/NPDES Permit WV1019252 on numerous occasions beginning with the Summer 2022 monitoring period.

89.     Unless enjoined, Republic will remain in continuing violation of the Clean Water Act.

90.     On information and belief, Plaintiff alleges that Republic is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the effluent limitations in WV/NPDES Permit WV1019252 because Republic has taken no meaningful action to eradicate the underlying cause of the violations.

91.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Republic is liable for civil penalties of up to $68,445 per day of violation for its violations of the effluent limitations in WV/NPDES Permit WV1019252.

**FOURTH CLAIM FOR RELIEF**
(SMCRA Violations at the Skitter 2 Surface Mine)

92.     Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 91 *supra*.

93.     Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

94.     As discussed above, federal and state regulations under SMCRA include performance standards that (1) prohibit surface mining operations that cause violations of effluent standards in Clean Water Act permits and (2) prohibit operations from causing material damage to the hydrologic balance outside of the permit area.

95.     Under W. Va. Code St. R. § 38-2-3.33.c, all performance standards are

incorporated as conditions in permits issued under the State Act.

96.    WV/NPDES Permit WV1019252 regulates Republic's discharges from the Skitter 2 Surface Mine (Mining Permit S302299).

97.     On information and belief, Plaintiff alleges that Republic has violated the effluent limitations in WV/NPDES Permit WV1019252 on one or more occasion beginning with the Summer 2022 monitoring period.

98.    Consequently, Republic has committed one or more violations of the performance standards incorporated in the regulations under SMCRA.

99.    Because those performance standards are permit conditions, Republic is also in violation of the terms and conditions of Mining Permit S302299.

100.    Unless enjoined, Republic will remain in ongoing and continuing violation of SMCRA.

101.    On information and belief, Plaintiff alleges that Republic is in continuing and/or intermittent violation of SMCRA as a result of its violations of the effluent limitations in WV/NPDES Permit WV1019252 because Republic has taken no meaningful action to eradicate the underlying cause of the violations.

**FIFTH CLAIM FOR RELIEF**
(Clean Water Act Violations of WV/NPDES Permit Number WV1019422)

102.    Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 101 *supra*.

103.    Republic's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the CWA, which prohibits the discharge of any pollutant by any person, except in compliance with a permit. 33 U.S.C. § 1311.

104.    The selenium whole-body fish tissue limits in WV/NPDES Permit WV1019422 are "effluent standards or limitations" for purposes of section 505(a)(1) of the CWA because they are a condition of a permit issued under section 402 of the Act. 33 U.S.C. § 1365(f).

105.    Each and every discharge in excess of the effluent limitations in WV/NPDES Permit WV1019422 is actionable under section 505(a)(1) of the CWA. 33 U.S.C. § 1365(a)(1).

106.    A violation of a limitation in a permit with semi-annual monitoring is considered to be a violation on each and every day of that monitoring period.

107.    On information and belief, Plaintiff alleges that Republic has violated the effluent limitations in WV/NPDES Permit WV1019422 on numerous occasions beginning with the Summer 2022 monitoring period.

108.    Unless enjoined, Republic will remain in continuing violation of the Clean Water Act.

109.    On information and belief, Plaintiff alleges that Republic is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the effluent limitations in WV/NPDES Permit WV1019422 because Republic has taken no meaningful action to eradicate the underlying cause of the violations.

110.    Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Republic is liable for civil penalties of up to $68,445 per day of violation for its violations of the effluent limitations in WV/NPDES Permit WV1019422.

**SIXTH CLAIM FOR RELIEF**
(SMCRA Violations at the Republic 2 Surface Mine)

111.    Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 110 *supra*.

112.    Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal

court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

113.     As discussed above, federal and state regulations under SMCRA include performance standards that (1) prohibit surface mining operations that cause violations of effluent standards in Clean Water Act permits and (2) prohibit operations from causing material damage to the hydrologic balance outside of the permit area.

114.     Under W. Va. Code St. R. § 38-2-3.33.c, all performance standards are incorporated as conditions in permits issued under the State Act.

115.     WV/NPDES Permit WV1019422 regulates Republic's discharges from the Republic 2 Surface Mine (Mining Permit S300101).

116.     On information and belief, Plaintiff alleges that Republic has violated the effluent limitations in WV/NPDES Permit WV1019422 on one or more occasion beginning with the Summer 2022 monitoring period.

117.     Consequently, Republic has committed one or more violations of the performance standards incorporated in the regulations under SMCRA.

118.     Because those performance standards are permit conditions, Republic is also in violation of the terms and conditions of Mining Permit S300101.

119.     Unless enjoined, Republic will remain in ongoing and continuing violation of SMCRA.

120.     On information and belief, Plaintiff alleges that Republic is in continuing and/or intermittent violation of SMCRA as a result of its violations of the effluent limitations in WV/NPDES Permit WV1019422 because Republic has taken no meaningful action to eradicate the underlying cause of the violations.

**SEVENTH CLAIM FOR RELIEF**
(Clean Water Act Violations of WV/NPDES Permit Number WV1022121)

121.    Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 120 *supra*.

122.    Republic's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the CWA, which prohibits the discharge of any pollutant by any person, except in compliance with a permit. 33 U.S.C. § 1311.

123.    The selenium whole-body fish tissue limits in WV/NPDES Permit WV1022121 are "effluent standards or limitations" for purposes of section 505(a)(1) of the CWA because they are a condition of a permit issued under section 402 of the Act. 33 U.S.C. § 1365(f).

124.    Each and every discharge in excess of the effluent limitations in WV/NPDES Permit WV1022121 is actionable under section 505(a)(1) of the CWA. 33 U.S.C. § 1365(a)(1).

125.    A violation of a limitation in a permit with semi-annual monitoring is considered to be a violation on each and every day of that monitoring period.

126.    On information and belief, Plaintiff alleges that Republic has violated the effluent limitations in WV/NPDES Permit WV1022121 on numerous occasions beginning with the Summer 2022 monitoring period.

127.    Unless enjoined, Republic will remain in continuing violation of the Clean Water Act.

128.    On information and belief, Plaintiff alleges that Republic is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the effluent limitations in WV/NPDES Permit WV1022121 because Republic has taken no meaningful action to eradicate the underlying cause of the violations.

129.    Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Republic is liable for civil penalties of up to $68,445 per day of violation for its violations of the effluent limitations in WV/NPDES Permit WV1022121.

### EIGHTH CLAIM FOR RELIEF
(SMCRA Violations at the MTB5 Surface Mine)

130.    Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 129 *supra*.

131.    Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), allows citizen suits in federal court against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter."

132.    As discussed above, federal and state regulations under SMCRA include performance standards that (1) prohibit surface mining operations that cause violations of effluent standards in Clean Water Act permits and (2) prohibit operations from causing material damage to the hydrologic balance outside of the permit area.

133.    Under W. Va. Code St. R. § 38-2-3.33.c, all performance standards are incorporated as conditions in permits issued under the State Act.

134.    WV/NPDES Permit WV1022121 regulates Republic's discharges from the MTB5 Surface Mine (Mining Permit S301006).

135.     On information and belief, Plaintiff alleges that Republic has violated the effluent limitations in WV/NPDES Permit WV1022121 on one or more occasion beginning with the Summer 2022 monitoring period.

136.    Consequently, Republic has committed one or more violations of the performance standards incorporated in the regulations under SMCRA.

137.    Because those performance standards are permit conditions, Republic is also in

violation of the terms and conditions of Mining Permit S301006.

138.     Unless enjoined, Republic will remain in ongoing and continuing violation of SMCRA.

139.     On information and belief, Plaintiff alleges that Republic is in continuing and/or intermittent violation of SMCRA as a result of its violations of the effluent limitations in WV/NPDES Permit WV1022121 because Republic has taken no meaningful action to eradicate the underlying cause of the violations.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this court enter an Order:

(1)     Declaring that Republic has violated and is in continuing violation of the Clean Water Act and SMCRA;

(2)     Enjoining Republic from operating its facilities in such a manner as will result in further violations of the effluent limitations in its WV/NPDES Permits and performance standards incorporated into in its Mining Permits;

(3)     Ordering Republic to immediately comply with all effluent limitations, monitoring and reporting requirements, and other terms and conditions of its WV/NPDES Permits;

(4)     Ordering Republic to immediately comply with the terms and conditions of its WVSCMRA Permits;

(6)     Ordering Republic to pay appropriate civil penalties up to $68,445 per day for each CWA violation;

(7)     Ordering Republic to conduct monitoring and sampling to determine the environmental effects of their violations, to remedy and repair environmental contamination

and/or degradation caused by their violations, and restore the environment to its prior uncontaminated condition;

(8)    Awarding Plaintiff's attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

(9)    Granting other such relief as the Court deems just and proper.

Dated:  November 7, 2025                Respectfully submitted,

BENJAMIN A. LUCKETT (WVSB No. 11463)
DEREK O. TEANEY (WVSB No. 10223)
JOSEPH M. LOVETT (WVSB No. 6926)
APPALACHIAN MOUNTAIN ADVOCATES
P.O. Box 507
Lewisburg, WV 24901
(304) 873-6080
bluckett@appalmad.org

*Counsel for Plaintiff*